(81 P.3d 447)

No. 90,293

JESUS LOZANO, *Appellee*, v. EXCEL CORPORATION, *Appellant*.

Opinion filed December 19, 2003.

*D. Shane Bangerter*, of Rebein & Bangerter, P.A., of Dodge City, for appellant.

*Stanley R. Ausemus*, of Stanley R. Ausemus, Chartered, of Emporia, for appellee.

Before RULON, C.J., GREEN, J., and STEPHEN D. HILL, District Judge, assigned.

RULON, C.J.: Respondent Excel Corporation appeals the decision of the Workers Compensation Board (Board) granting permanent partial disability to claimant Jesus Lozano. The respondent contends that the Board erroneously applied K.S.A. 44-510e(a) to grant a permanent partial disability when K.S.A. 44-510d(a)(22) provides the exclusive compensation for the petitioner's injury. We affirm.

The facts in this case are not greatly disputed. On February 17, 1999, while using an air knife to pull a piece of meat at his employment with the respondent, the claimant experienced a pull in his "left inguinal" area and pain in the region of his left medial thigh, as the result of a hernia.

Upon the recommendation of Dr. Villanueva, to whom the claimant had been referred by the respondent, the claimant underwent an inguinal hernia repair. Following the surgery, the claimant continued to experience pain, so a second surgery was performed for the purpose of "exploration of [the] left inguinal area, neurolysis of ilioinguinal and genitofemoral nerve[s] and repair of [the] hernia in layers."

Eventually, claimant visited with an attorney who recommended that claimant visit with Dr. Pedro Murati. After examining the claimant's medical history and performing a physical examination, Dr. Murati opined the petitioner suffered from neurolysis of the ilioinguinal and genitofermoral nerves causing a permanent, whole person impairment of 10 percent.

After the claimant filed a workers compensation claim for a permanent partial disability and the respondent denied the claim, the matter was argued before an administrative law judge. The administrative law judge found the claimant's injury was controlled by K.S.A. 44-510d(a)(22), which permits only temporary total disability.

Upon appeal to the Board, the Board reviewed the record and recognized that the only medical testimony presented concerning the extent of the claimant's disability was offered by the claimant through Dr. Murati. Finding Dr. Murati's testimony to be credible, the Board reversed the administrative law judge's decision and found the claimant had a 10 percent permanent partial disability.

The Board has exclusive jurisdiction to review the decisions, findings, orders, and awards of the administrative law judge who initially considered the workers compensation claims. See K.S.A. 44-555c(a). Judicial review of a case is dependent upon review by the Board. "On any such review, the board shall have authority to grant or refuse compensation, or to increase or diminish any award of compensation or to remand any matter to the administrative law judge for further proceedings." K.S.A. 44-551(b)(1).

Although the Board's review of the administrative law judge's determination is unlimited, judicial review of the Board's ruling is limited to questions of law in accordance with the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.* See K.S.A. 44-556(a); *Nance v. Harvey County*, 263 Kan. 542, 551, 952 P.2d 411 (1997).

Here, the respondent attempts to frame the issue on appeal as a question of law, arguing the Board misinterpreted the applicable statutes. In reviewing the interpretation rendered by the Board, this court gives deference to the Board's determination. However, the final construction of a statute is a question of law over which

an appellate court may exercise unlimited review. See *Pruter v. Larned State Hospital*, 271 Kan. 865, 868, 26 P.3d 666 (2001).

K.S.A. 44-510d provides the basis for compensation for certain scheduled permanent partial disabilities. Subsection (a)(22) of the statute provides:

"(22) For traumatic hernia, compensation shall be limited to the compensation under K.S.A. 44-510h and 44-510i and amendments thereto, compensation for temporary total disability during such period of time as such employee is actually unable to work on account of such hernia, and, in the event such hernia is inoperable, weekly compensation during 12 weeks, except that, in the event that such hernia is operable, the unreasonable refusal of the employee to submit to an operation for surgical repair of such hernia shall deprive such employee of any benefits under the workers compensation act."

By the plain language of this provision, an employee who suffers a hernia injury cannot collect more than temporary total disability under the method of calculating such disability under K.S.A. 44-510h and K.S.A. 44-510i.

However, the injury at issue here is no longer a hernia injury. Although the claimant originally suffered from a hernia for which he sought medical treatment, the undisputed evidence is that following the surgeries to repair the hernia the claimant suffered from nerve damage to his ilioinguinal and genitofemoral nerves. The Board specifically found the nerve injuries were a natural consequence of the hernia injury, and such finding is adequately supported by the record. Therefore, this court must adopt the Board's finding. See *Mudd v. Neosho Memorial Regional Med. Center*, 275 Kan. 187, 191, 62 P.3d 236 (2003).

The nerve injuries arose out of and are related to the hernia injury and, therefore, are compensable under the Workers Compensation Act. See *Frazier v. Mid-West Painting, Inc.*, 268 Kan. 353, 356, 995 P.2d 855 (2000) (citing *Chinn v. Gay & Taylor, Inc.*, 219 Kan. 196, 199, 547 P.2d 751 [1976]). Yet, the nerve injuries are not the same injury as the hernia injury and are not governed by K.S.A. 44-510d(a)(22).

A close review of K.S.A. 44-510d reveals nothing to indicate that injuries to nerve tissue are scheduled permanent partial disabilities. Consequently, the Board properly turned to K.S.A. 44-510e for

guidance in determining the extent of compensation to award such an injury.

K.S.A. 44-510e(a) provides, in pertinent part:

"Permanent partial general disability exists when the employee is disabled in a manner which is partial in character and permanent in quality and which is not covered by the schedule in K.S.A. 44-510d and amendments thereto. The extent of permanent partial general disability shall be the extent, expressed as a percentage, to which the employee, in the opinion of the physician, has lost the ability to perform the work tasks that the employee performed in any substantial gainful employment during the fifteen-year period preceding the accident, averaged together with the difference between the average weekly wage the worker was earning at the time of the injury and the average weekly wage the worker is earning after the injury. In any event, the extent of permanent partial general disability shall not be less than the percentage of functional impairment. Functional impairment means the extent, expressed as a percentage, of the loss of a portion of the total physiological capabilities of the human body as established by competent medical evidence and based on the fourth edition of the American Medical Association Guides to the Evaluation of Permanent Impairment, if the impairment is contained therein. An employee shall not be entitled to receive permanent partial general disability compensation in excess of the percentage of functional impairment as long as the employee is engaging in work for wages equal to 90% or more of the average gross weekly wage that the employee was earning at the time of the injury."

The only medical testimony provided concerning the functional impairment the claimant sustained by virtue of the nerve injury was from Dr. Murati, who emphasized the pain produced from the nerve injuries was more frequent than "occasional" and precluded normal activity. Consequently, the respondent's argument that because the nerve damage did not result in loss of motor control or damage to surrounding tissue, the nerve damage should properly be categorized as temporary total disability is without merit. The Board properly applied K.S.A. 44-510e to determine the claimant's permanent partial disability.

Dr. Murati's testimony was undisputed and was based upon the schedules provided in the fourth edition of the American Medical Association Guides to the Evaluation of Permanent Impairment (1995). According to Dr. Murati, the claimant suffered a 10% total body disability due to the damage to his ilioinguinal and genitofemoral nerves. The Board's award is therefore supported by sub-

stantial competent evidence in the record. We must affirm. See *Mudd*, 275 Kan. at 191.

Affirmed.